

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

October 26, 1961

Honorable Jesse James
State Treasurer
Treasury Department
Austin, Texas

Opinion No. WW-1180

Re: Whether the reports re-
quired by H.B. No. 5,
57th Legislature, 1st
Called Session, being
the amendment to the
Texas Escheat Statutes,
to be made by holders
of personal property
include only property
due persons whose last
known residence was in
Texas.

Dear Mr. James:

This refers to your recent letter posing five questions with
respect to House Bill No. 5, Acts 57th Leg., 1st C. S. 1961, Ch.
21, p. 25.

Your first question follows:

"1. The definition of personal property in the
escheat statute is limited to property held by a per-
son or beneficiary whose last known residence was
in Texas. Therefore, should the report by the holder
include only amounts due persons whose last known re-
sidence was in Texas?"

House Bill No. 5 adds to the present escheat statutes a new
article denominated Article 3272a. After requiring every person
holding personal property subject to escheat to file a report there-
of with the State Treasurer, the article, in Section 1 (b), pro-
vides in part:

"The term 'personal property', includes, but is
not limited to, money, .... and all other personal
property and increments thereto, whether tangible or
intangible, and whether <u>held within this State, or
without the State for a person or beneficiary whose
last known address was in this State.</u>" (Emphasis
supplied)

The Legislature, in our opinion, intended by this definition of personal property to include all personal property subject to escheat which is held in this State, regardless of the last known residence of the beneficiary or person for whom the property is held, and that held outside the State for a person or beneficiary whose last known residence was in this State.

It is demonstrably clear that the phrase "for a person or beneficiary whose last known residence was in this State" modifies only the words "held . . . without the State", and not the words "held within this State". The position of the last comma in the provision quoted above is indicative of the legislative intent as to this matter. It segregates the phrase "for a person or beneficiary whose last known residence was in this State" with the words "or without the State". Beyond that, according to standard rules of grammar, the phrase "or without the State" would have been followed by a comma, as in the case of all parenthetical expressions, if the words "for a person or beneficiary whose last known residence was in this State" had been intended to qualify the phrase "within this State".

Aside from the foregoing, if the contrary had been intended by the Legislature, we would expect to find the provision drawn so as to clearly set forth such contrary intention, for example, as follows:

"The term 'personal property' includes but is not limited to, money . . . and all other personal property and increments thereto held for a person or beneficiary whose last known residence was in this State, whether tangible or intangible, and whether held within or without this State."

Moreover, Article 3272a elsewhere demonstrates that the statute contemplates the reporting of property regardless of the State of the beneficiary's last known residence. Section 10 removes all doubt in this respect by taking away, under certain specified conditions, the statute's presumption of abandonment in the case of ". . . property which is subject to the provisions of this article and is held for or owned or distributable to an owner whose last known residence is in another State by a holder who is subject to the jurisdiction of this State . . ." The quoted provision recognizes that personal property which is held by persons in this State and owned by persons whose last known residence is outside of this State is required to be reported and is, under certain conditions, subject to escheat by virtue of this article. Accordingly, your first question is answered in the ne-

Honorable Jesse James, page 3 (WW-1180)

gative.

Your second question is as follows:

"2. The report of mineral proceeds is to consist of a list of all credits grouped as to the counties from which the credited proceeds were derived. Therefore, should the report of mineral proceeds by the holder be limited to proceeds from production from Texas counties?"

The relevant portion of Article 3272a reads as follows:

"Section 2. Form of Report. . .

". . .

"(c) In the case of mineral proceeds, a list of all credits grouped as to the counties from which the credited proceeds were derived, including credits which have theretofore been charged off or disposed of in any manner except by payment to the owner thereof; giving the name and last known address of the owner; the fractional mineral interest of the owner; description and location of the land or lease from which the oil, gas or other mineral was produced; the name of the person, firm or corporation who operated the oil or gas well or mine; the period of time during which such proceeds accumulated and the price for which such oil, gas, or other mineral was sold, each such several ownerships to be given an identifying number. The nature and identifying number, if any, or description of the property, and the amount appearing from the records to be due, except that items of value under Ten Dollars ($10) each may be reported in aggregate.;" (Emphasis added)

There is nothing in the above language, or in the balance of the article, to indicate that the Legislature was referring to Texas counties only. We must assume then that the section means counties irrespective of the State in which such counties are situated. This is the only construction which would be consistent with the fact that the article applies to certain property held without the State of Texas as well as to that held within the State of Texas. Accordingly, your second question is answered in the negative.

Your third question is as follows:

"3. The report of mineral proceeds is to include the description and location of the land or lease from which the oil, gas or mineral was produced. Will the file number of the holder and the style of the property be a sufficient description?"

This article does require a "description and location of the land or lease from which the oil, gas or mineral was produced". The article does not specify that the description and location must be a legal or metes and bounds description and location. On the other hand, it does not say that a mere reference to a description and location is sufficient. In this situation the obvious purpose of the reporting is to present information which is, without further investigation, sufficient to put claimants on notice that the property is subject to escheat and sufficient to enable the State to bring suit to determine judicially that such property has escheated. Therefore, it would be counter to the purpose of the article to compel the State and other claimants to search private records and files in order to identify the property and its source. In our opinion, the report must, therefore, present information which is, at least, sufficient to enable one to identify and locate the property by referring to the public records of the county and state in which the property is situated and without having to refer to the files of the holder or to any other private files. Hence, your third question is answered in the negative.

Your fourth question is as follows:

"4. The report of the mineral proceeds is to include the name of the person, firm or corporation who operated the oil or gas well or mine. Will the name of the last operator be sufficient?"

In our opinion, Section 2(c), quoted above, means the operator of the oil or gas well or mine at the time the mineral proceeds were produced and this would, of course, include more than one operator if there was more than one operator during such period. Your question is, therefore, answered in the negative.

The fifth question follows:

"5. The report of mineral proceeds is to include the price for which the oil, gas or other minerals was sold. Does 'price' mean the total amount of money

received for the minerals sold for each owner listed in the report?"

Webster's New International Dictionary, Second Edition, defines the word "price" as follows:

"1.   Value; estimation; preciousness; excellence, worth. . .
2.   In the broadest sense, the quantity of one thing that is exchanged or demanded in barter or sole of another; the exchange value of one thing expressed in terms of units of another thing; in the narrower and more common sense the amount of money given, or set as the amount that will be given or received, in exchange for anything; specif., the amount at which actual current transactions take place in the market".

In our opinion, the Legislature here used the word "price" in the more common sense, as denoting the amount of money received for the minerals rather than the amount of money received per unit sold.  It is our further opinion that the total price was intended to be reported, as distinguished from the price from time to time received on various sales of minerals. Ascertainment of the varying unit price of minerals does not seem to us to be the purpose of the article and such information would not appear to be of material benefit in identifying the mineral proceeds.  Accordingly, your final question is answered in the affirmative.

## SUMMARY

Under House Bill No. 5, 57th Legislature 1961, First Called Session, reports by holders of personal property to the State Treasurer are to include:  (1) certain personal property held within this State, regardless of the last known address of the person or beneficiary for whom the property is held, and that held without the State for a person or beneficiary whose last known address was in this State;  (2)  mineral proceeds from counties outside of Texas as well as counties within this State;  (3)  a description and location of the lease and property from which oil, gas or minerals was produced, which is sufficient to enable a person to identify and locate the lease and land by referring

to the public records of the county in which
the property is situated and without having
to refer to the files of the holder; (4)
the name of all operators of the oil or gas
well or mine during the period in which mi-
nerals were produced; and (5) the total
amount of money received for minerals sold
for each owner listed in the report.

Very truly yours,

WILL WILSON
Attorney General of Texas

By
Henry G. Braswell
Assistant

HGB/rd

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

Vernon Teofan
Gordon Cass
W. Ray Scruggs
Ben Harrison

REVIEWED FOR THE ATTORNEY GENERAL
BY: Houghton Brownlee, Jr.